**O'NEAL et al. v. TERRY et al.**

No. 6640.

Court of Civil Appeals of Texas.
Texarkana.

Oct. 9, 1952.

Rehearing Denied Dec. 4, 1952.

R. O. Kenley and B. F. Whitworth, Houston, Joe W. Lovelace, Linden, for appellants.

B. Reagan McLemore, Longview, for appellees.

REUBEN A. HALL, Chief Justice.

Appellants, heirs of H. A. O'Neal and A. E. Allday, instituted this action in the form of trespass to try title against ap-

pellees, heirs of Mrs. R. S. Terry and other claimants, for title and possession of an undivided one-sixth mineral interest in a tract of land containing 265 acres, a part of the Hugh Owen Survey in Cass County. In addition appellants sought recovery of the value of their undivided one-sixth interest of the one-eighth royalty of the oil and gas produced from the 265 acre tract. Trial was to the court without a jury and resulted in judgment that the appellants take nothing.

Appellants' first point is that "the court erred in making Finding of Fact No. 10, to the effect that on August 12, 1913, Mrs. R. S. Terry had no 'implied notice' of the claim of O'Neal and Allday of an interest in the Hugh Owen Survey." In our opinion this point presents a controlling issue in this case.

Mrs. R. S. Terry, deceased, is the agreed common source of title. On January 6, 1910, Mrs. Terry executed a power of attorney to one L. C. Weaver, which, omitting the formal parts reads, as follows: "That I, Mrs. R. S. Terry, of said state and county, surviving wife of R. S. Terry, deceased, and his sole heir, do hereby make, constitute and appoint L. C. Weaver, of Cass County, Texas, my agent and attorney in fact for me and in my name to demand, sue for, and recover all of my interest in the Hugh Owen Survey in Cass County, Texas, near Bagus Springs, containing about 591 acres now unpatented, and my said attorney has full authority to apply for a patent to said land from the State of Texas, and to do anything necessary to perfect my title to said land. And in consideration of the services already rendered and to be rendered hereafter by said L. C. Weaver, I hereby agree to convey to said Weaver one-half of all land that he may recover for me in said survey or perfect title to the same for me, my said agent is to be at all expenses in perfecting the title to the same, which expense shall embrace all attorney's fees, in the event it becomes necessary to institute suit for said land. After said title is perfected, then the said L. C. Weaver is to pay one-half of the taxes due on said land and I agree to pay the other half." This instru-

ment was duly recorded in the deed records of Cass County. The above instrument is the first move Mrs. Terry made to recover her asserted interest in the Hugh Owen Survey. On January 18, 1910, a patent from the state of Texas to Burrell Parker, assignee of Hugh Owen, was issued, and was recorded on March 30, 1910, in the deed records of Cass County, Texas. On March 19, 1910, L. C. Weaver executed a deed to H. A. O'Neal and E. A. Allday, attorneys, which instrument was recorded on September 7, 1910, in the deed records of Cass County. Omitting the formal parts, it reads as follows: "That I, L. C. Weaver, of said State and County, for and in consideration of legal services heretofore rendered and to be hereafter rendered by O'Neal & Allday, a firm of lawyers composed of H. A. O'Neal and E. A. Allday of Cass County, Texas, do hereby grant, bargain, sell and convey unto the said O'Neal & Allday, an undivided one-sixth interest in and to the following described tracts of land in Cass County, Texas, more fully described as follows: Five hundred and ninety-three acres of land in Beat 5, on Frazier's Creek being the Hugh Owen Survey. Also (28) twenty-eight acres of Hugh Owen Survey adjoining the above described tract, said 28 acres being all the land embraced in said last named tract. Also 78 acres on Eastern border of Cass County, Texas, opposite the corner of Louisiana and Arkansas line. Also 124 acres of said Hugh Owen Survey near Bivins, being all the Hugh Owen Surveys in Cass County, except one survey near Dalton. To have and to hold said one-sixth undivided interest in all of said tracts of land forever in fee simple." On October 7, 1910, O'Neal and Allday by deed recorded on September 17, 1910, conveyed the same land as described in the instrument copied next above, to L. C. Weaver, reserving a one-sixth undivided interest in all petroleum and gas in and under the 593 and 28 acre tracts. On September 7, 1911, Mrs. R. S. Terry conveyed to L. C. Weaver, pursuant to the power of attorney theretofore given him by her, a one-half undivided interest in 530 acres out of the Hugh Owen Survey. This deed "intends to convey to

the said L. C. Weaver an undivided one-half interest in all of my holdings in the Hugh Owen Survey," and this deed was recorded on September 9, 1911, in the deed records of Cass County. The record title above set out forms the basis of appellants' claim to the one-sixth undivided interest in the minerals in and under a 265 acre tract of the Hugh Owen Survey here in dispute, and being the portion of a 530 acre tract set aside to Mrs. Terry in a partition deed between her and Weaver, discussed later.

Prior to the execution by Mrs. Terry of the power of attorney to L. C. Weaver of January 6, 1910, C. M. Burnett gave to L. C. Weaver a power of attorney dated December 20, 1909, and recorded December 23, 1909, to recover at least a portion of the land covered by the power of attorney from Mrs. Terry to Weaver. On January 20, 1909, Mrs. Mary Sanders, widow of J. F. Sanders, executed a power of attorney to J. P. Wood and George Beasley, filed for record February 12, 1909, which concerns the same property here in controversy. These claims, other than Mrs. Terry's, to the Hugh Owen Survey were later conveyed to L. C. Weaver by the claimants. On August 12, 1913, a partition deed was executed by Mrs. Terry and L. C. Weaver in which Mrs. Terry received the north 265 acres of the 530 acre tract of the Hugh Owen Survey which is here in controversy, and Weaver received the 265 acres on the south. Weaver's attorneys, O'Neal and Allday, were not parties to this partition deed. Appellants contend that the deed records of Cass County showed, on the date of said partition deed, that O'Neal and Allday were the owners of an undivided one-sixth mineral interest in and to the whole 530 acre tract. It is appellants' contention further that O'Neal and Allday, not being parties to said partition deed dividing the 530 acres between Mrs. Terry and Weaver, were not bound in any manner by said partition, and that their one-sixth mineral interest in the 265 acre tract was not in any wise adversely affected.

This brings us to the core of appellants' contention of the alleged error of the trial court in finding that Mrs. Terry on August 12, 1913, the date of the execution of the partition deed, had no "implied notice" of the claim of O'Neal and Allday to an interest in the Hugh Owen Survey. Appellants contend that the record of the deed from Weaver to O'Neal and Allday of the one-sixth undivided interest in the land, and later the record of the deed from O'Neal and Allday to Weaver to the land in which they reserved the one-sixth undivided mineral interest, constituted constructive notice to Mrs. Terry of the contents of those deeds and the claim of O'Neal and Allday to such interest. With this contention we agree. At the time Mrs. Terry gave the power of attorney to Weaver at least the Burnett claim to a part of same land was outstanding and adverse to her claim. As heretofore stated Weaver cleared up those outstanding claims by purchasing the interest of the adverse parties. In one instance he gave ⅔ of his one-half undivided interest to clear a claim. All deeds of those adverse claims were made to Weaver. On that date Weaver conveyed to her the 265 acres on the north and she conveyed to Weaver the 265 acres on the south together with other acreage he had purchased. At the time of the partition deed there is no question in this record but that the deed from Weaver to O'Neal and Allday and the deed from O'Neal and Allday to Weaver, with reservation of the one-sixth mineral interest, were duly filed for record, and it seems to us that the record of these deeds would constitute notice to all persons thereafter dealing with Weaver, of the claim of O'Neal and Allday. Art. 6646 provides: "The record of any grant, deed or instrument of writing authorized to be recorded, which shall have been duly proven or acknowledged for record and duly recorded in the proper county, shall be taken and held as notice to all persons of the existence of such grant, deed or instrument." The deed from Weaver to his attorneys O'Neal and Allday, and the deed from them back to him, wherein the undivided one-sixth mineral interest was retained, in our opinion, falls squarely within the terms of the above statute. We can see no good reason why these

transfers should not be governed by the above statute. The title of Weaver, in our opinion, had its origin in the power of attorney-dated January 6, 1910, and all parties dealing with him with respect to the land in controversy, including Mrs. Terry, would be charged with notice of all transfers and sales made by Weaver subsequent to his origin of title. This being true Mrs. Terry was bound to take notice of the records to determine whether Weaver had transferred the title, or a part of it, under his power of attorney, at the time she executed with Weaver a partition deed dividing the land between them. In Williams v. Cook, Tex. Com.App., 282 S.W. 574, 575, it is said: "The rule announced in those cases undoubtedly is a sound one. But all cases touching the question hold that a searcher of such records need go no further than the origin or inception of the title claimed in such record. So that the real question in this case is whether or not the second award and the patent to George A. Cook depended in any wise upon the first award; in other words, whether or not the first award was the inception of the George A. Cook title subsequently perfected in the patent. * * * We are of the opinion that the inception of the George A. Cook title was the application of May 7, 1896, when his first right to the land originated, and, under all the authorities, purchasers from him were not charged with notice by anything of record in Stephens county affecting the title prior to that date." But with equal emphasis it may be stated that all subsequent purchasers were bound to take notice of all transfers since the inception or origin of title in Cook on May 7, 1896. Such being true it is our opinion that Mrs. Terry was charged with constructive notice of the undivided mineral interest of O'Neal and Allday reserved by them in their deed to the land back to Weaver subsequent to the inception of Weaver's title under his power of attorney from Mrs. Terry, and that the partition deed between Mrs. Terry and Weaver would not affect the title to the undivided one-sixth mineral interest claimed and owned by O'Neal and Allday. See also

Breen v. Morehead, 104 Tex. 25, 136 S.W. 1047. This point is sustained.

By point 2 appellants complain of the action of the trial court in admitting in evidence, over their objection, the partition deed dated August 12, 1913, between Mrs. R. S. Terry and L. C. Weaver. What we have heretofore stated in this opinion we think disposes of this point and renders any further discussion pertaining thereto unnecessary. The action of the trial court in admitting said deed in evidence was harmless.

Appellants by their point No. 3 assail the action of the trial court in finding that H. A. O'Neal and E. A. Allday from and after August 12, 1913, the date of the partition deed between Mrs. Terry and Weaver, had notice and knowledge of the said partition deed. We find no evidence in the record to support this finding, but should we be mistaken in such assertion we do not think their knowledge or lack of knowledge of the partition deed made subsequent to the inception and recording of their title could in any wise affect them. White v. McGregor, 92 Tex. 556, 50 S.W. 564; Houston Oil Co. v. Kimball, 103 Tex. 94, 122 S.W. 533.

By point 4 appellants assert that the trial court erred in the last part of its finding of fact No. 2 to the effect that the claim of C. M. Burnett to an interest in the Owen Survey was adverse to the title of Mrs. R. S. Terry. In our opinion this finding of fact becomes immaterial here for the reason that the record shows that in the partition deed the parties recited "that L. C. Weaver, as agent and attorney in fact for C. M. Burnett," is "entitled to 44½ acres of said land." And further, the record reflects that prior to the partition deed Weaver had purchased either all or a portion of the Burnett claim and had title to same on the date of the partition deed between him and Mrs. Terry, whereby the 530 acre tract of Hugh Owen Survey was divided between them. Furthermore, appellees in their answer alleged that "on or about the 6th day of January, 1910, Mrs. R. S. Terry was the owner of an undivided

530 acres interest" in the certificate upon which the patent to the Hugh Owen Survey was issued, which is in no wise disputed except as to the O'Neal and Allday ⅙ undivided mineral interest. What we have heretofore said in our opinion disposes of all other points raised by appellants.

In our opinion the trial court erred in finding that Mrs. Terry did not have implied notice of the deeds between Weaver and O'Neal and Allday, respecting the ⅙ undivided mineral interest in the lands in controversy. It is our conclusion as above stated, that she did have constructive notice of the deed from Weaver to O'Neal and Allday of the one-sixth undivided interest in the land and the deed from O'Neal and Allday back to Weaver of the one-sixth undivided interest in which the minerals to two tracts were reserved. Such being our conclusion it therefore follows that the judgment of the trial court must be reversed and here rendered for appellants, and it is so ordered.

Reversed and rendered.