**Matthew CLOSS, Appellant,**

v.

**GOOSE CREEK CONSOLIDATED INDEPENDENT SCHOOL DISTRICT, et al., Appellees.**

No. 06–93–00045–CV.

Court of Appeals of Texas, Texarkana.

Argued March 14, 1994.

Decided April 12, 1994.

James A. Drexler, Ayre, Sims & Associates, Houston, for appellant.

James B. Ewbank, II, Ewbank & Harris, Austin, Karen D. Matlock, Asst. Atty. General Chief, Enforcement Division, Austin, John Roberson, Hill, Parker & Johnson, Houston, for appellees.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

BLEIL, Justice.

Matthew Closs appeals from a take-nothing summary judgment dismissing all of his claims against the appellees. The issues on appeal are whether the trial court erred by denying Closs an opportunity for discovery; whether the evidence establishes that the appellees were entitled to summary judgment based on their assertions of immunity; and whether the trial court's order striking the affidavit of one of Closs's witnesses is defective because it fails to state good cause for imposing the sanction.[1] We resolve these issues in favor of the appellees and affirm.

In 1988, Matthew Closs worked as the director of maintenance for Goose Creek Consolidated Independent School District (Goose Creek). Closs's wife at that time, Kathy Closs, notified the Harris County Sheriff's Department that her husband was involved in criminal activities, including stealing school district property and accepting kickbacks from contractors hired by the school district. David Maxwell, a Texas Ranger working for the Texas Department of Public Safety, investigated the allegations. Maxwell contacted the Harris County District Attorney's office. Assistant District Attorney Terry Wilson was interested in pursuing criminal charges against Closs. A search of the Closs home, pursuant to a search warrant, led to the seizure of equipment and other items belonging to the school district, and a Harris County grand jury issued subpoenas for records from the school district and other businesses related to Closs's activities. The school district's attorney, Richard Peebles, responded to the subpoenas and worked with the district attorney's office. The grand jury indicted Closs on theft charges, but the indictments were dismissed after Kathy Closs became an uncooperative and reluctant witness.

In connection with the criminal allegations, the school district conducted its own investigation. Goose Creek hired the law firm of Andrews & Kurth to review the charges against Closs. Based on the law firm's review, the school district proposed that Closs be fired. The school board held a hearing on

---

1. The trial court also premised its summary judgment on the basis that various statutes of limitations barred each of Closs's claims. Because of our resolutions of the other issues on appeal, it is not necessary that we address the various limitations questions.

July 11 and July 12, 1989, with Peebles advising the school board on evidentiary and procedural matters during the hearing. After the hearing, the school board voted to fire Closs because of his misconduct. Closs appealed his termination to the Texas Education Agency (TEA). Finding good cause for the termination, the Commissioner of Education upheld the school board's decision.

In 1990, Goose Creek adopted a vendor exclusion policy. This policy prohibited firms that had contracts with the school district and that hired former Goose Creek employees who had been fired for theft or misuse of school district property from assigning those former employees to work on school district projects.[2] Closs was fired from his new job with a construction company that did work for the school district.

Closs sued Goose Creek, the school district trustees, Peebles, other school district officials and employees, and Maxwell on August 26, 1991. Closs's petition includes allegations of malicious prosecution, invasion of privacy, tortious interference with contract, civil conspiracy, and violations of his civil rights under the United States Code. 42 U.S.C.A. § 1983 (West 1981).

All of the defendants filed motions for summary judgment based on immunity and the statute of limitations. The defendants also filed a motion for sanctions, asking the trial court to strike the affidavit of Kathy Closs dated October 15, 1991, that was included in Closs's controverting summary judgment evidence because that affidavit was obtained by coercion. The trial court granted the joint motion for sanctions, struck Kathy Closs's October 1991 affidavit, and granted summary judgment to all of the defendants.

The function of a summary judgment is the elimination of patently unmeritorious claims or untenable defenses. *Gulbenkian v. Penn,* 151 Tex. 412, 252 S.W.2d 929 (1952). A party moving for summary judgment has the burden of establishing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c); *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970). A defendant moving for summary judgment can prevail by conclusively establishing against the plaintiff at least one factual element of each theory pleaded by the plaintiff, or by conclusively establishing every factual element of an affirmative defense. *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972); *Gibbs,* 450 S.W.2d at 828.

A summary judgment may be based on the uncontroverted testimony of an interested witness if the evidence is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and easily controverted. TEX.R.CIV.P. 166a(c). As for the nonmovant's ability to controvert the statements, this does not require

that the movant's summary judgment proof could have been easily and conve-

---

**2.** The Board of Trustees prepared the following letter to be sent to the district's contractors and prospective contractors:

April 10, 1990
TO COMPANY ADDRESSED:
The Goose Creek Consolidated Independent School District hereby gives notice to all vendors, suppliers, and project bidders that certain ex-employees of the district, terminated for policy violations involving theft and/or misuse of school properties, create present staff morale problems by being on any school property, and/or by initiating any communications, oral or written, to any present employees of the district concerning the business of the vendor, supplier, or bidder.
This notice serves to advise vendors, suppliers, and project bidders who are, or who employ such terminated employees of the district, that if any of those employees appear on any school property and/or initiate any oral or written communication concerning the business at hand with any school employee, the Goose Creek Consolidated Independent School District will terminate its business relations with such vendor, supplier, or project bidder in the most expeditious legal manner.
If a violation occurs, the business relationship with the district is subject to termination even though the work being performed is awarded by bid and/or contract. All future requests for proposals by the district shall contain notice of this determination as a part of the bidding materials.
By Order of the Board of Trustees,
s/ Ralph B. Pearce
Ralph B. Pearce
Interim Superintendent

niently rebutted. Rather, it means that testimony at issue is of a nature which can be effectively countered by opposing evidence. If the credibility of the affiant or deponent is likely to be a dispositive factor in the resolution of the case, then summary judgment is inappropriate. On the other hand, if the non-movant must, in all likelihood, come forth with independent evidence to prevail, then summary judgment may well be proper in the absence of such controverting proof.

*Casso v. Brand,* 776 S.W.2d 551, 558 (Tex. 1989). We view the evidence in the light most favorable to the nonmovant, and all doubts as to the existence of a genuine issue of material fact are resolved in the nonmovant's favor. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). The trial court did not specify the ground on which it relied in granting summary judgment; therefore, the summary judgment will be affirmed on appeal if any of the theories advanced are meritorious. *Rogers v. Ricane Enters., Inc.,* 772 S.W.2d 76, 79 (Tex.1989).

## I. DISCOVERY

■ Closs contends that the trial court erred in granting the appellees' motions for summary judgment without first allowing him the opportunity to pursue discovery. Closs stated in his affidavit attached to his response to the motions for summary judgment that, if he could undertake discovery, he could disprove the defendants' denial of wrongdoing.[3]

Rule 166a provides that

[s]hould it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

**3.** The trial court sustained the defendants' objection that this statement in Closs's affidavit was

TEX.R.CIV.P. 166a(g). A request for a continuance pursuant to Rule 166a is a matter within the trial court's discretion, and the trial court's ruling will not be disturbed on appeal unless a clear abuse of discretion is shown. *Kubinsky v. Van Zandt Realtors,* 811 S.W.2d 711, 716 (Tex.App.—Fort Worth 1991, writ denied).

Closs filed his original petition in August 1991. The summary judgments were granted in early March 1993. Closs had an opportunity to develop the case through discovery. *See Cedillo v. Jefferson,* 802 S.W.2d 866, 868 (Tex.App.—Houston [1st Dist.] 1991, writ denied); *Smith v. Christley,* 684 S.W.2d 158, 161 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). Closs complains that he was prevented from engaging in discovery. The trial court did not enter an order prohibiting discovery. The trial court entered a docket control order in November 1992; however, that order sets deadlines for discovery, but contains no prohibition against engaging in discovery.

Beyond a conclusory statement that he could procure controverting evidence, Closs did not specify what evidence he hoped to procure, did not detail its materiality, and did not provide the trial court with a compelling reason to grant a continuance so Closs could engage in discovery. *See Wavell v. Roberts,* 818 S.W.2d 462, 465–66 (Tex.App.—Corpus Christi 1991, writ denied); *Draper v. Garcia,* 793 S.W.2d 296, 301–02 (Tex.App.—Houston [14th Dist.] 1990, no writ). The trial court did not abuse its discretion by denying the motion for a continuance.

## II. THE SUMMARY JUDGMENT EVIDENCE

Closs complains that the trial court erred in overruling his objections to the summary judgment evidence offered by the school district appellees and further erred in sustaining objections to Closs's controverting summary judgment evidence.

irrelevant, speculative, and a legal conclusion.

■ Closs objected to the affidavit of Harry Griffith, the superintendent of schools for Goose Creek, because the affidavit failed to state that it was based on personal knowledge. In Griffith's affidavit, he asserts that he is also the custodian of records for Goose Creek and authenticates various attached school district records as being true and correct copies of the original documents. *See* TEX.R.CIV.EVID. 902.

■ In a summary judgment, an affidavit does not need to specifically state that it is made on personal knowledge if, as here, statements in the affidavit clearly show that the affiant was speaking from personal knowledge. *Krueger v. Gol,* 787 S.W.2d 138, 141 (Tex.App.—Houston [14th Dist.] 1990, writ denied). Griffith's affidavit asserts that he is the superintendent and thus custodian of school district records. This unchallenged assertion shows how Griffith learned or knew of the facts set forth in his affidavit and satisfies the requirement under Rule 166a(f) that affidavits be made on personal knowledge, even though there is no specific recitation that the affidavit is based on personal knowledge. TEX.R.CIV.P. 166a(f); *see Jackson T. Fulgham Co. v. Stewart Title Guar. Co.,* 649 S.W.2d 128, 130 (Tex.App.—Dallas 1983, writ ref'd n.r.e.).

Closs also objected to the attachments to Griffith's affidavit, claiming that the attachments are copies and that the absence of the originals has not been explained. A duplicate is admissible to the same extent as the original unless a question is raised as to the authenticity of the original or it would otherwise be unfair to submit the duplicate in lieu of the original. TEX.R.CIV.EVID. 1003. Closs has not attacked the authenticity of the original documents, nor does he claim that it would otherwise be unfair to consider the duplicates.

Closs filed a supplemental response to the motion for summary judgment on January 27, 1993. The defendants objected to Closs's second affidavit and to three other affidavits attached to this supplemental response as being untimely filed per the trial court's docket control order. The trial court sustained this objection.

■ The trial court's control of pretrial activities is discretionary. TEX.R.CIV.P. 166; *Loffland Bros. Co. v. Downey,* 822 S.W.2d 249, 251 (Tex.App.—Houston [1st Dist.] 1991, orig. proceeding). A docket control order controls the subsequent course of the action unless modified at trial to prevent manifest injustice. TEX.R.CIV.P. 166; *Wichita Constr. Co. v. Progress Petroleum Prods.,* 412 S.W.2d 70, 72 (Tex.Civ.App.—Fort Worth 1967, no writ). Closs shows no trial court error in this regard.[4]

## III. RICHARD PEEBLES AND THE SCHOOL DISTRICT DEFENDANTS

### A. Closs's Common–Law Causes of Action

Closs contends that the trial court erred in granting summary judgment on all of Closs's common-law causes of action to the individual school district appellees and to Peebles, the school district's attorney, based on governmental immunity. Closs sued Peebles and the school district appellees as individuals for (1) malicious prosecution (Peebles and school trustee Manuel Escontrias), (2) invasion of privacy (only Escontrias), (3) interference with contractual relations (the Board of Trustees and two school district employees), and (4) civil conspiracy (all of the individual school district appellees and Peebles).

■ A government official or employee who is sued in his individual capacity is immune from suit and liability if (1) his status or action can be classified as quasi-judicial, (2) he acted in good faith, and (3) his actions were within the scope of his authority. *Brooks v. Scherler,* 859 S.W.2d 586, 588 (Tex. App.—Houston [14th Dist.] 1993, n.w.h.).

---

4. The merits of the parties' remaining objections will be hereinafter addressed in connection with a review of the evidence establishing or controverting the appellees' right to summary judgment on Closs's various causes of action.

Trustees and agents of a school district acting in their official capacity and in good faith enjoy this same governmental immunity, except in limited circumstances not relevant here. TEX.CIV.PRAC. & REM.CODE ANN. § 101.051 (Vernon 1986); *Campbell v. Jones,* 153 Tex. 101, 264 S.W.2d 425, 427 (1954); *Russell v. Edgewood Indep. School Dist.,* 406 S.W.2d 249, 252 (Tex.Civ.App.—San Antonio 1966, writ ref'd n.r.e.).

█ This general rule is not applicable if the official abandons his official duties and becomes a mere intermeddler. *Russell,* 406 S.W.2d at 252; *see also Stimpson v. Plano Indep. School Dist.,* 743 S.W.2d 944 (Tex. App.—Dallas 1987, writ denied). Unlawful or unauthorized actions generally are not considered to be actions within the scope of the official's authority. *Bagg v. University of Texas Medical Branch,* 726 S.W.2d 582, 585 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). Closs asserts that genuine fact issues exist regarding whether the individual appellees have acted outside the scope of their authority and are therefore not immune.[5]

### 1. Malicious Prosecution

█ Malicious prosecution is an intentional tort. *Davis v. City of San Antonio,* 739 S.W.2d 394, 396 (Tex.App.—San Antonio 1987), *rev'd on other grounds,* 752 S.W.2d 518 (Tex.1988). Closs asserts that issues of fact exist regarding whether Escontrias and Peebles were acting within the scope of their official duties and therefore immune from suit and liability for this tort.

█ Escontrias swore that the only action he took regarding Closs's criminal prosecution was to instruct the school district's attorney to respond to a grand jury subpoena served on the school district and to cooperate fully with the district attorney's office. These cannot reasonably be considered to be unlawful or unauthorized acts outside the scope of Escontrias's official duties. The affidavits of the Harris County deputy sheriff and the assistant district attorney establish that they had no contact with Escontrias and that the investigation and prosecution of Closs was initiated based on information provided by Kathy Closs. Closs's own defense lawyer executed an affidavit asserting that, in all legal probability, criminal indictments would not have been sought or obtained against his client without the information provided by Kathy Closs.

█ Closs argues that Peebles acted outside the scope of his authority by knowingly providing false information and by failing to disclose exculpatory information to the district attorney's office. Peebles's affidavit establishes that he was authorized by Goose Creek's administration and Board of Trustees to respond to the subpoena and that he assembled the documents responsive to the subpoena. Escontrias's affidavit confirms this.[6] The documents were then picked up by Maxwell, the investigating officer. Peebles met with the assistant district attorney and Goose Creek's superintendent in October 1988 because the superintendent wanted the district attorney's office to know that the school district would cooperate fully in the investigation. Peebles had further contact with the district attorney's office in which he, acting in his capacity as the school district's agent and legal counsel, provided information or responded to information requests. Terry

---

5. Closs contends that his amended petition alleges acts committed by the appellees that are clearly wrongful and not within the scope of their authority. Pleadings, however, do not constitute summary judgment evidence. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979).

6. Closs objected to Escontrias's statement that "Mr. Peebles was told to cooperate fully with the grand jury and the Harris County prosecutor's office" as hearsay. A statement is not hearsay when offered for a purpose other than to prove the truth of the matter asserted in the statement. TEX.R.CIV.EVID. 801(d); *Turner, Collie & Braden, Inc. v. Brookhollow, Inc.,* 642 S.W.2d 160, 167 (Tex.1982). When a party offers a statement to show that it was made rather than to show its truth or falsity, the hearsay rule does not apply. *City of Austin v. Houston Lighting & Power Co.,* 844 S.W.2d 773, 791 (Tex.App.—Dallas 1992, writ denied). The out-of-court statement was not offered for the truth of the matter asserted. The statement was not inadmissible as hearsay.

Wilson, the assistant district attorney handling Closs's case, provided an affidavit stating that all contact between his office and Goose Creek's officers, employees, and legal counsel was in their official capacity as board members, agents, and employees of the school district.

Closs asserts that Peebles acted outside the scope of his authority because he knew that some of the property Closs was accused of stealing was at Closs's home with the permission of the school district. Closs's statements regarding what Peebles knew were struck by the trial court as being speculative. Closs also points out that the affidavit of the assistant district attorney does not indicate that this exculpatory evidence, assuming Peebles knew about it, was disclosed to the district attorney's office. Wilson's failure to mention this particular piece of exculpatory evidence does not create a fact issue regarding whether Peebles knew about, yet withheld, this evidence. Wilson does state that the school district was served with a subpoena to produce specified documents and cooperated with the investigation by producing numerous documents responsive to the subpoena.

Closs also refers to the affidavit of Johnny Clark, a former superintendent for Goose Creek. Clark's affidavit establishes that, at least until 1984, school district employees and local citizens were allowed to utilize school property as long as the use did not interfere with school district business. Closs asserts that Wilson's affidavit does not establish that this policy, which at best only establishes school policy until 1984, was disclosed to the district attorney's office. Again, Wilson's silence does not raise a fact issue regarding whether Peebles exceeded the scope of his

authority by knowing about, but not disclosing, this particular evidence to the district attorney's office. Closs put forth no controverting evidence to create a fact issue concerning whether Escontrias or Peebles exceeded the scope of their authority to act for the school district.

### 2. Invasion of Privacy

 Closs alleged that Escontrias intruded on his personal privacy by placing him in a false and damaging light in the eyes of the public. Closs's petition alleges that, in the summer of 1991, Escontrias persuaded several Goose Creek employees to give false testimony before the TEA, which caused the TEA to publish false information that Closs stole and misappropriated school property. Invasion of privacy is a willful tort. *See Billings v. Atkinson,* 489 S.W.2d 858, 860 (Tex.1973); *but see Diamond Shamrock Ref. and Mktg. Co. v. Mendez,* 844 S.W.2d 198, 200–01 (Tex.1992) (plurality opinion) (noting that the court has never expressly held that a tort for false light invasion of privacy exists in Texas).

 Escontrias stated in his affidavit that he did not encourage anyone to testify against Closs, give false testimony, or otherwise lie about Closs, either at the termination hearing or the hearing before the TEA. Escontrias further stated that he did not participate in any way in obtaining the testimony given by the employees at the TEA hearing in July 1991. The school district employees provided affidavits asserting that they testified truthfully at the hearing and were not forced to testify nor told how to answer the questions.[7] Closs presented no controverting evidence to create a fact issue regarding

---

**7.** Closs attacks the credibility of the statements made by the school district employees who testified against him at the school district hearing and again at the hearing held by the TEA. Closs's counteraffidavit asserts that these employees testified falsely against him at the termination hearing and one of these employees was caught lying under oath. Goose Creek objected to these statements in Closs's counteraffidavit as irrelevant, speculative, and improper opinion testimony. The credibility of a witness may be attacked by evidence in the form of an opinion or reputation. Tex.R.Civ.Evid. 608(a). Specific instances of the conduct of a witness, other than conviction for a crime, may not be inquired into nor proved by extrinsic evidence for purposes of attacking the credibility of the witness. *Id.* 608(b).

Closs's affidavit asserts that one of Goose Creek's employees was caught lying at the TEA hearing. Closs does not specify what the false testimony was, and a record of the TEA hearing

Escontrias's activities or solicitation of false testimony during the summer of 1991.

### 3. Tortious Interference

 Closs claimed that all of the school trustees, by passing the vendor exclusion policy, intentionally and maliciously interfered with an existing contractual relationship Closs had with Beavers Construction Company. Interference with a contract is an intentional tort. *Frost Nat'l Bank v. Alamo Nat'l Bank*, 421 S.W.2d 153, 156 (Tex.Civ. App.—San Antonio 1967, writ ref'd n.r.e.).

The Board of Trustees has the legal power and duty to manage and govern the public schools of the district and adopt such rules, regulations, and by-laws as the Board may deem proper. Tex.Educ.Code Ann. § 23.-26(b), (d) (Vernon 1987). Evidence in support of the school district appellees' motion for summary judgment established legitimate reasons for adopting the policy.[8] The Board sought to protect Goose Creek and its interests and prevent the demoralization of its employees who professed to be uncomfortable working with former employees of the school district who had been fired for dishonesty.[9] Closs provided no controverting evidence to create a fact issue concerning whether the trustees had exceeded their authority or had abandoned their official duties and become mere intermeddlers in his business affairs. The board members are immune.

Accordingly, if adoption of the policy was within the board's authority, Pearce, the school district's interim superintendent, and Cote, the purchasing director, are also immune from liability for assisting the board in adopting and implementing the policy. Pearce is also immune from liability under Section 21.912 of the Texas Education Code. *See* Tex.Educ.Code Ann. § 21.912 (Vernon 1987) (excusing "professional employees" from liability for acts done within their official duties).

### 4. Civil Conspiracy

 Closs contends that Peebles and the individual school district defendants were not entitled to summary judgment on his civil conspiracy claim based on immunity. Closs's petition asserted that the school district appellees, Peebles, and Maxwell conspired to have him prosecuted on unwarranted criminal charges, to invade his privacy and ruin his good name and reputation by depicting him in a false light, and to interfere with his contractual relationships and ability to maintain employment.

 Actionable civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex.1983). The essential elements are: (1) two or more persons; (2) an object to be

---

is not provided in the transcript. Closs also asserted that he did not do the things his former co-workers testified to and that the Commissioner found to be true, including using the school district's employees and materials to complete personal projects during working hours and misusing school district equipment by appropriating it for his deer lease. Closs could have raised his allegations of perjury in a motion for a rehearing filed with the TEA and could also have appealed the agency's decision to a Travis County district court. *See* Tex.Educ.Code Ann. § 11.13 (Vernon 1991). To the extent Closs is now collaterally attacking the findings of the Commissioner of Education, he is estopped from doing so. *See Vaughn v. Burroughs Corp.*, 705 S.W.2d 246, 249 (Tex.App.—Houston [14th Dist.] 1986, no writ) (factual determinations of state administrative agency are binding on the trial court).

8. Refer to the discussion *infra* pertaining to Closs's § 1983 civil rights claim that the policy is a violation of his equal protection and due process rights.

9. Closs objected to the statements in the trustees' affidavits that assert that one of the reasons the Board adopted the vendor exclusion policy was because some of the school district employees were demoralized by having to work with these former employees. Closs claims that the employees' statements are hearsay. A statement is not hearsay when offered for a purpose other than to prove the truth of the matter asserted in the statement. Tex.R.Civ.Evid. 801(d); *Brookhollow*, 642 S.W.2d at 167. The employees' expressions of demoralization were offered to show why the Board of Trustees thought it necessary to adopt the vendor exclusion policy.

accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result. *Id.* Civil conspiracy is an intentional tort. *Id.* at 933. As a general rule, an actionable conspiracy must consist of wrongs that could have been actionable against the individual conspirators. *Schoellkopf v. Pledger,* 778 S.W.2d 897, 900 (Tex. App.—Dallas 1989, writ denied).

As discussed above, the summary judgment evidence established that the board members and school district employees did not engage in unlawful acts and were acting within the scope of their employment. Peebles's summary judgment evidence established that he always acted within the scope of his official duties, entitling him to claim immunity. There is no controverting evidence to create a fact issue regarding whether any of the conspirators committed one or more unlawful, overt acts.

The conspiracy is not actionable absent evidence of a wrongful act committed by at least one of the alleged conspirators. *Merrell v. Fanning & Harper,* 597 S.W.2d 945, 953 (Tex.Civ.App.—Tyler 1980, no writ); *see also Schoellkopf,* 778 S.W.2d at 900 (finding that, without evidence to support another substantive tort, there is no independent liability for civil conspiracy). If Peebles, Maxwell, and the school district appellees committed no unlawful acts that would destroy their immunity as to the acts that make up the civil conspiracy, the appellees are likewise immune from suit and liability for civil conspiracy.

### B. Closs's § 1983 Claims [10]

Closs asserts that the school district appellees (1) violated his due process rights by not providing him with a fair termination hearing (Goose Creek and its Board of Trustees); (2)

participated in a malicious prosecution in violation of his due process rights (Escontrias and Peebles); and (3) violated his due process and equal protection rights by adopting a vendor exclusion policy for the purpose of depriving him of the ability to maintain gainful employment (Goose Creek and the Board of Trustees).

 Local governing bodies can be sued directly under § 1983 where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers or when the deprivation of a constitutional right is pursuant to established custom, although not officially adopted by the governing body's policy makers. *Monell v. Department of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A school district is a local governing body for purposes of a § 1983 claim. *Lopez v. Houston Indep. School Dist.,* 817 F.2d 351, 353 (5th Cir.1987).

 Government officials enjoy qualified good faith immunity from liability if their actions do not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The unlawfulness of the action in question must be apparent in light of pre-existing law. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). A right is clearly established when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Id.*

Closs relies on *Elliott v. Perez,* 751 F.2d 1472 (5th Cir.1985), for the proposition that the trial court's determination of a claim of

---

**10.** Section 1983 reads:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the

deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C.A. § 1983 (West 1981).

qualified immunity before the initiation of discovery should be limited to an analysis of the plaintiff's petition and the question of whether it states a violation of clearly established law. In *Elliott*, the plaintiffs' case against a local prosecutor and judge was dismissed based on the defendants' assertions of absolute immunity. The trial court treated the motions to dismiss as motions for summary judgment. In reviewing the dismissal, the Fifth Circuit created a heightened pleading requirement in civil rights cases brought against government officials when the defense of immunity is likely to come into play. *Id.* at 1473. The circuit court held that the trial court should demand that the plaintiffs' pleadings state with factual detail and particularity the basis for the claim, including why the government official cannot successfully maintain the defense of immunity, so that the trial court can then "ascertain what the real facts are" and make a proper determination on the question of governmental immunity. *Id.* at 1473, 1480; *see Isquith v. Middle S. Util., Inc.*, 847 F.2d 186, 194 (5th Cir.) (recognizing that verified pleadings may be treated as affidavits if the facts asserted are within the pleader's personal knowledge and are otherwise admissible), *cert. denied*, 488 U.S. 926, 109 S.Ct. 310, 102 L.Ed.2d 329 (1988).[11] The Fifth Circuit's decision is based in part on the Supreme Court's holding that, until resolution of the applicability of the immunity defense, discovery should not be allowed. *See Elliott*, 751 F.2d at 1478 (citing to *Harlow*, 457 U.S. 800, 102 S.Ct. 2727).

■ Closs claims that, under the rule set forth in *Elliott*, a well-pleaded claim overcomes the assertion of qualified immunity prior to the initiation of discovery. While verified pleadings may be used to determine summary judgment cases in certain instances in federal court, pleadings are not competent summary judgment proof in Texas. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). Furthermore, the circuit court's decision did not forbid the introduction or consideration of other evidence any party may have in support of or in opposition to a motion for summary judgment based on the immunity doctrine.[12]

### 1. Termination Hearing

■ The parties do not dispute that Closs had a constitutionally protected property interest in continued employment with the school district and that this interest could not be compromised without due process. Closs claims that the school district itself is responsible because the violation of his right to a fair hearing was pursuant to school district policy or custom. The summary judgment evidence established that no such policy or custom existed.[13] Closs has presented no evidence to create a fact issue regarding whether the school district had a policy or custom of depriving its employees of their due process rights.

11. The Supreme Court struck down the heightened pleading standard created by the Fifth Circuit in municipal liability cases; however, the Court declined to address whether a heightened pleading requirement would be required in cases involving the qualified immunity of individual government officials. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. ——, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

12. In fact, the circuit court noted that the trial court's decision was based in part on pleadings from another case. The circuit court did not forbid the trial court from looking at those other pleadings, but simply admonished the trial court to make sure those materials were in acceptable form for use in a summary judgment motion.

*Elliott v. Perez*, 751 F.2d 1472, 1482 n. 27 (5th Cir.1985).

13. Goose Creek Interim Superintendent Ralph Pearce stated that the school district had no officially sanctioned pattern or practice of denying employees their constitutional and civil rights during the time Pearce served as superintendent. Pearce stated that Goose Creek had express policies providing for the protection of its employees' rights.

Closs attacked Pearce's statements as being inadmissible because they were unclear and not positive, direct, credible, free from contradiction, or easily controverted. *See* Tex.R.Civ.P. 166a(c). The trial court properly overruled Closs's objection. Pearce's statements are an assertion of fact that Closs could have controverted by introducing opposing summary judgment evidence showing the existence of such a pattern or practice.

■ As for the individual school district appellees, they are entitled to qualified good faith immunity when performing discretionary functions if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. The school district appellees claimed in their motion for summary judgment that they took no action violating Closs's due process rights.

■ The summary judgment evidence establishes that Closs had notice of the hearing and of the allegations against him, was represented by an attorney, and was free to present evidence, cross-examine witnesses, and object to any evidence introduced at the hearing. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494, 506 (1985) (public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story). As the Supreme Court said in *Loudermill,* to require more than this before termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee. *Id.* Although an administrative hearing must comply with the minimum requirements of due process, the strict rules applicable to courts of law do not apply to such proceedings. *Lewis v. Metropolitan Sav. & Loan Ass'n,* 550 S.W.2d 11, 16 (Tex.1977).[14]

To controvert the appellees' summary judgment evidence, Closs contends that his due process rights were violated because the hearing was held while he was still under criminal indictment, thus he could not testify on his own behalf for fear of waiving his Fifth Amendment privilege. Although Closs was in a predicament because of the parallel criminal and administrative proceedings, this does not amount to a denial of due process by the school board. *See Hoover v. Knight,* 678 F.2d 578 (5th Cir.1982). Closs always had a choice, and indeed exercised that choice, regarding the assertion of his Fifth Amendment rights. He was not forced to waive his rights or else face automatic termination from his job with the school district. *See id.* at 581–82. Each board member has stated that his or her respective vote to terminate Closs was based on the evidence presented at the two-day hearing. Closs presented no controverting evidence to create a fact issue regarding whether his assertion of the privilege against self-incrimination automatically meant his termination from employment with the school district.

### 2. Malicious Prosecution

■ Malicious prosecution can form the basis of a claim under 42 U.S.C.A. § 1983.

14. Closs complains that having Peebles preside over the hearing was foreseeably unfair because Peebles was Goose Creek's attorney and, thus, at one time had been Closs's attorney, and had cooperated with the district attorney's office (per grand jury subpoena). Although Closs's attorney did raise several objections at the beginning of the hearing, he did not complain about Peebles acting as the hearing officer and advisor to the Board of Trustees. Closs did not include Peebles in the group of defendants sued for terminating him in violation of due process and concedes that Peebles is absolutely immune for his conduct at the hearing because Peebles was performing adjudicative functions. *See Butz v. Economou,* 438 U.S. 478, 508–12, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

Peebles did not participate in the Board's deliberations, nor vote on the issue of Closs's termination. The school trustees all asserted that they made their respective decisions to fire Closs based on the evidence presented during a two-day administrative hearing, during which Closs was represented by counsel, could present and object to the evidence, and could cross-examine witnesses called by the school district. Beyond a conclusory statement that Peebles's participation was "foreseeably unfair," Closs presented no controverting evidence (such as cites to the transcript of the termination hearing) to raise a fact issue as to whether or how Peebles's participation prevented him from having a fair opportunity to respond to the charges against him. *See Lewis v. Metropolitan Sav. & Loan Ass'n,* 550 S.W.2d 11, 14 (Tex.1977) (finding denial of due process when hearing examiner made rulings that excluded competent and material evidence).

A former Goose Creek board member did provide an affidavit asserting that she would not have voted to fire Closs if she had been aware of certain evidence not presented at the termination hearing. The trial court sustained the school district's objection that this statement was speculation.

*Sanders v. English,* 950 F.2d 1152, 1159 (5th Cir.1992); *Brummett v. Camble,* 946 F.2d 1178, 1180 (5th Cir.1991). Closs contends that Escontrias and Peebles violated his due process rights by providing the district attorney's office with false information and by failing to disclose exculpatory evidence that caused criminal charges to be brought against Closs without probable cause.

As previously discussed in regard to Closs's common-law malicious prosecution claim, Escontrias's evidence established that the only action he took regarding Closs's criminal prosecution was to instruct Peebles to respond to a grand jury subpoena. Peebles's evidence established that he acted at the behest of the Board of Trustees, compiled the documents requested in the subpoena, and handed that information over to the grand jury. There is no controverting evidence to raise a fact issue concerning whether Escontrias or Peebles engaged in conduct that a reasonable person would realize violated Closs's right to be free from malicious prosecution.

### 3. Vendor Exclusion Policy

Closs claims that Goose Creek's adoption of the vendor exclusion policy caused him to lose his job with Beavers Construction Company, forced him to leave the state for a brief time period to find work, and impaired his constitutional rights to equal protection and due process. At issue is an official policy adopted by the school board, so the school district may also be liable under § 1983. *See Monell,* 436 U.S. 658, 98 S.Ct. 2018. The school district appellees argued in their motion for summary judgment that they were entitled to immunity because the policy, as a matter of law, was a legitimate exercise of their authority and does not impair Closs's equal protection or due process rights.[15]

■ The federal equal protection clause allows the government considerable leeway to enact legislation that may appear to affect similarly situated people differently. Under traditional equal protection principles, these distinctions need only be drawn in such a manner as to bear some rational relationship to a legitimate state end. *Clements v. Fashing,* 457 U.S. 957, 963, 102 S.Ct. 2836, 2843, 73 L.Ed.2d 508 (1982). The classifications are set aside only if they are based solely on reasons totally unrelated to the pursuit of the government's goals and only if no grounds can be conceived to justify them. *Id.* Only when the government action burdens a suspect class or a fundamental right is a more vigorous scrutiny appropriate. *See id.* There is no claim that Closs is a member of a suspect class or that a fundamental right is implicated.

■ The board members assert that the policy was passed to prevent staff morale problems caused when current school district employees had to work with former school district employees fired from the school district for misconduct. The board members also asserted that the policy was intended to protect the school district and its interests from employees fired for dishonesty involving school district funds or assets. Closs has presented no controverting evidence to challenge the legitimate purposes behind the policy. The policy was rationally related to achieving a legitimate purpose and does not violate Closs's equal protection rights.

■ Turning now to Closs's due process claims, we recognize that due process is not merely a procedural safeguard. It also reaches those situations in which the deprivation of life, liberty, or property was accomplished by legislation which by operating in the future could, given even the fairest possible procedure in application to individuals, nevertheless destroy all three. *Poe v. Ullman,* 367 U.S. 497, 541, 81 S.Ct. 1752, 1775–76, 6 L.Ed.2d 989 (1961) (Harlan, J., dissenting). The guaranty of due process demands that a law shall not be unreasonable, arbi-

---

15. The school district is not so much asserting immunity as it is disproving an element of Closs's § 1983 suit, i.e., proving that the policy was not a violation of Closs's due process or equal protection rights.

trary, or capricious, and that the means selected shall have a real and substantial relation to the object sought to be attained. *Nebbia v. New York,* 291 U.S. 502, 525, 54 S.Ct. 505, 510, 78 L.Ed. 940 (1934); *cf. Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 464, 101 S.Ct. 715, 724, 66 L.Ed.2d 659 (1981) (refusing to invalidate legislative classification as irrational if, considering the evidence presented to the governmental body and evidence of which judicial notice may be taken, the question of the legislation's irrationality is at least debatable). Invalidation of legislation for irrationality or arbitrariness is proper only if the governmental body could have had no legitimate reason for its decision. *See Kaplan v. Clear Lake City Water Auth.,* 794 F.2d 1059, 1069 (5th Cir.1986). A law is arbitrary or unreasonable when the social necessity the law is to serve is not sufficient to justify the restrictions on the rights involved. *Pedraza v. Tibbs,* 826 S.W.2d 695, 698 (Tex.App.—Houston [1st Dist.] 1992, writ dism'd w.o.j.).

■ As discussed in connection with Closs's equal protection claim, the school board members established facially legitimate purposes for adopting the policy.[16] The Board has a strong interest in protecting the school district's interests and operations. The policy restricts the appropriate class of former employees (those fired for particular acts of misconduct), and the restriction is confined to prohibit the former employees from working on Goose Creek projects only. The policy bears a rational relationship to its stated purposes of safeguarding employee morale and protecting the school district's interests. The Board's action will not run afoul of due process merely because another method may seem fairer or wiser. *See Spencer v. Texas,* 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967). The Board was not acting arbitrarily or irrationally. The policy cannot be deemed to violate due process because it bears a rational relationship to legitimate school district concerns. There was no actionable conduct under § 1983.

16. In fact, as long as a rational basis for the action exists, it need not be the real reason for the government action to satisfy substantive due

## IV. DAVID MAXWELL

### A. Common–Law Claims

Closs contends that the trial court erred in granting summary judgment to Maxwell on the malicious prosecution, invasion of privacy, and civil conspiracy claims based on official immunity. Closs contends that there are fact issues regarding whether Maxwell, who investigated the criminal allegations against Closs, acted within the scope of his authority and in good faith.

■ Police officers, as public officials, are entitled to qualified immunity when they are acting within the course and scope of their authority, performing discretionary functions, and acting in good faith. *Campbell,* 153 Tex. 101, 264 S.W.2d 425; *see also Dent v. City of Dallas,* 729 S.W.2d 114, 117 (Tex. App.—Dallas 1986, writ ref'd n.r.e.), *cert. denied,* 485 U.S. 977, 108 S.Ct. 1272, 99 L.Ed.2d 483 (1988). Closs does not dispute that Maxwell was engaged in discretionary acts requiring personal deliberation, decision, and judgment. *See Wyse v. Department of Pub. Safety,* 733 S.W.2d 224, 227 (Tex.App.—Waco 1986, writ ref'd n.r.e.) (finding that investigative activities constitute discretionary acts).

■ A law enforcement officer acts within the scope of his authority when he performs his official duties. *Edgar v. Plummer,* 845 S.W.2d 452, 453 (Tex.App.—Texarkana 1993, n.w.h.). The fact that the officer's specific act forming the basis of the suit may have been wrong or negligent does not mean he was acting outside the scope of his authority. *Id.* Maxwell was enlisted to investigate claims made by Closs's wife to the effect that Closs had been stealing school district property and engaging in other criminal activities. Maxwell was not called in to work on the investigation until after Kathy Closs came forward with her allegations. Maxwell interviewed Kathy Closs and requested that she submit to a polygraph test. Kathy Closs's

process. *Eiland v. Wolf,* 764 S.W.2d 827, 834 (Tex.App.—Houston [1st Dist.] 1989, writ denied).

first polygraph test was inconclusive; her second test indicated she was answering the questions truthfully. Kathy Closs gave a detailed statement about the kickbacks her husband received and the property her husband allegedly stole. Her sworn complaint is part of the summary judgment record.

Maxwell contacted the district attorney's office, which previously had received information regarding Closs's alleged criminal activities. Assistant District Attorney Terry Wilson decided there was sufficient probable cause to obtain a search warrant for the Closs home. Maxwell executed the search warrant the same day it was issued and seized various items of property for use in the investigation and criminal prosecution of Closs. Maxwell stated that he did not contact the media with regard to the search warrant or allegations against Closs. A videotape of the search was made and shown to the grand jury. The grand jury issued subpoenas, conducted its own investigation, and subsequently indicted Closs. Maxwell states in his affidavit that he did not know any of the alleged coconspirators or Goose Creek officials before beginning his investigation.

Wilson stated in his affidavit that he believed Maxwell had probable cause to support the investigation of Closs and the search of Closs's home. Wilson did not witness Maxwell engaging in improper conduct and saw no evidence of a conspiracy. Wilson further stated that he requested dismissal of the indictments solely because of the uncooperative, unreliable behavior of Kathy Closs, who was a key witness in the criminal case.

The affidavits supporting Maxwell's motion for summary judgment establish that Maxwell was acting within the scope of his official duties and acted with probable cause, and therefore good faith, when he investigated Closs. See Edgar, 845 S.W.2d at 454. Closs relies on his own affidavit and an affidavit of his ex-wife to raise fact issues regarding Maxwell's good faith and actions within the scope of his employment. That affidavit was struck as a sanction and is not part of the summary judgment evidence.

Closs's affidavit asserts that he is innocent of the criminal charges for which he was indicted, but his affidavit never addresses the actions or conduct of Maxwell. Closs's own defense attorney stated that indictments would never have been sought against his client but for the evidence provided by Kathy Closs. Closs has not presented evidence to controvert the evidence establishing that Maxwell acted in good faith and within the scope of his law enforcement duties.

### 1. Merits of Closs's Malicious Prosecution Claim

■ The elements of a malicious prosecution action are: (1) the commencement of a criminal prosecution against the plaintiff; (2) which has been caused by the defendant or through the defendant's aid or cooperation; (3) which is terminated in the plaintiff's favor; (4) that the plaintiff was innocent; (5) that there was no probable cause for the proceedings; (6) that it was done with malice; and (7) that it damaged the plaintiff. *Browning–Ferris Indus., Inc. v. Zavaleta,* 827 S.W.2d 336, 338 (Tex.App.—Corpus Christi 1991, writ denied). Closs contends that the trial court erred in granting summary judgment to Maxwell based on summary judgment evidence that Maxwell had probable cause to seek Closs's criminal prosecution and acted without malice, and that the prosecution did not terminate in Closs's favor. We now examine these contentions individually.

■ Probable cause for a criminal prosecution is defined as the existence of such facts and circumstances as would excite belief in the mind of a reasonable person, acting on facts within his knowledge, that the person charged is guilty of the crime for which he was prosecuted. *Akin v. Dahl,* 661 S.W.2d 917, 921 (Tex.1983), *cert. denied,* 466 U.S. 938, 104 S.Ct. 1911, 80 L.Ed.2d 460 (1984). The question is not what the actual facts were, but what the prosecuting party honestly and reasonably believed the facts to be. *Compton v. Calabria,* 811 S.W.2d 945, 950 (Tex.App.—Dallas 1991, no writ). Gen-

erally, a party whose aid or cooperation causes a criminal complaint to be filed does so on probable cause when the party, in good faith, makes a full and fair disclosure to the prosecuting authority of the facts and circumstances known to the party and the complaint is thereafter filed. *Zavaleta*, 827 S.W.2d at 345; *Compton*, 811 S.W.2d at 950. Probable cause does not exist if the defendant knowingly made false statements to the prosecuting attorney or withheld material facts. *Compton*, 811 S.W.2d at 950.

■ Maxwell's affidavit established that he turned over all of the information gathered in his investigation to the district attorney's office. The assistant district attorney stated that he believed there was probable cause to support Maxwell's investigation. The summary judgment evidence established that a reasonable person could have believed Closs committed the crimes for which he was indicted.

■ A person acts with malice when an intentional wrongful act (1) is done willfully and purposely with ill will or evil motive to the injury of another, or (2) is done in reckless disregard of the rights of another and with indifference as to whether the other person is injured or not as to amount to wanton and willful action knowingly and unreasonably done. *Zavaleta*, 827 S.W.2d at 345 n. 3. Maxwell avers that his actions were not undertaken for an improper purpose, but done only in his capacity as a ranger working with the Department of Public Safety and charged with the duty to investigate reported criminal activity. Malice cannot be predicated upon acts which the actor had a legal right to do. *Ware v. Wright*, 252 S.W.2d 1003, 1005 (Tex.Civ.App.—Dallas 1952, no writ). The summary judgment evidence established that Maxwell was not acting with malice.

■ A termination of the underlying criminal prosecution in the plaintiff's favor

does not require a termination in his favor *on the merits*. *Davis v. City of San Antonio*, 752 S.W.2d 518, 523 (Tex.1988). Instead, the termination contemplated means the termination of the particular prosecution complained of, so that, if the prosecutor intends to proceed further in his purpose, he must initiate proceedings de novo. *Sullivan v. O'Brien*, 85 S.W.2d 1106, 1115 (Tex.Civ. App.—San Antonio 1935, writ ref'd). The prosecutor requested the dismissal of the indictments against Closs because of the unavailability and unreliability of Closs's ex-wife, who was a key witness.

This would seem to be evidence that Closs could establish this element of his malicious prosecution claim. There is an exception, however, if the dismissal of the prosecution was brought about or procured by misconduct of the accused. *Id; see also* RESTATEMENT (SECOND) OF TORTS § 660 (1977). The uncontroverted August 1992 affidavit of Kathy Closs established that she refused to cooperate with the prosecution because of the financial and emotional coercion of her exhusband. The proceedings against Closs were not terminated in his favor for purposes of meeting the requirements of a cause of action for malicious prosecution.

### 2. Merits of Closs's Invasion of Privacy Claim

■ Closs asserts that Maxwell is liable for invasion of privacy by placing Closs in a false light in the eyes of the public by telling the media that a search warrant and arrest warrants had been issued and when and where those warrants would be executed, and by acting in concert with Escontrias to solicit false testimony from Goose Creek employees so that the TEA published false information that Closs stole and misappropriated school property. One who gives publicity [17] to a matter concerning another that places the other before the public in a false light is subject to liability for invasion of privacy if:

---

**17.** Maxwell's motion for summary judgment notes that the only statements he is accused of publishing are the statements to the media regarding the execution of the search and arrest warrants.

(a) the false light in which the other was placed would be highly offensive to a reasonable person, and

(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

See *Diamond Shamrock*, 844 S.W.2d at 200–01 (defining the false light tort, but declining to decide whether such a tort exists in Texas); *see also* RESTATEMENT (SECOND) OF TORTS § 652E (1977). The false light type of invasion of privacy concerns untrue statements about a party. *Clarke v. Denton Publishing Co.*, 793 S.W.2d 329, 331 (Tex.App.—Fort Worth 1990, writ denied). Thus, truth of the statement published is a defense which defeats one of the elements of the cause of action.

The only evidence shows that Maxwell did not discuss the warrants with the media. The evidence also is undisputed that Closs was the subject of both a search warrant and an arrest.

Closs, however, disputes the truth of the publication by the TEA that he was guilty of stealing and misappropriating school district property and resources. Escontrias stated in his affidavit that he had no contact with the law enforcement personnel involved in the grand jury investigation. In addition, the school district employees who testified before the TEA provided affidavits asserting that they were not forced or coerced to testify and were not instructed on how to answer the questions. For the same reasons Escontrias is immune from suit and liability for false light invasion of privacy, Maxwell is also immune.

Closs complains that Maxwell was not entitled to summary judgment on Closs's civil rights malicious prosecution claim based on immunity.[18] A government official performing a discretionary function is generally shielded from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. *Anderson*, 483 U.S. at 638, 107 S.Ct. at 3038; *see also Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful action generally turns on the objective legal reasonableness of the action. *Harlow*, 457 U.S. at 819, 102 S.Ct. at 2738.

As discussed previously, Maxwell's summary judgment evidence established that he was performing a quasi-judicial/discretionary function within the scope of his authority, had reason to believe probable cause existed for his investigation and execution of the search warrant, and thus acted in good faith. *See Anderson*, 483 U.S. at 641, 107 S.Ct. at 3039 (law enforcement officer not liable when he reasonably but mistakenly concludes that probable cause is present). Closs presented no summary judgment evidence to controvert Maxwell's assertion of qualified immunity.

## V. SANCTION

Closs contends that the trial court erred in granting the appellees' motion for sanctions and striking the October 1991 affidavit of Kathy Closs because the trial court's order granting the motion fails to state the particulars of good cause for imposing the

18. Maxwell argues that he was entitled to summary judgment because Closs's petition fails to state a cause of action under § 1983. Whether pleadings fail to state a cause of action may not be resolved by summary judgment. *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex.1983). Only after a party has been given an opportunity to amend after special exceptions have been sustained may the case be dismissed for failure to state a cause of action. *Id.* Maxwell did not except to the allegations he now contends are too conclusory and fail to state a claim under § 1983 and is not entitled to summary judgment on the ground that Closs's petition fails to state a cause of action under § 1983.

sanction.[19] *See* TEX.R.CIV.P. 13 (requiring that the order state the particulars of good cause justifying the sanction). As a procedural matter, Closs did not raise this complaint in the trial court and presents nothing for review. TEX.R.APP.P. 52(a); *Booth v. Malkan*, 858 S.W.2d 641, 644 (Tex.App.— Fort Worth 1993, writ denied); *Bloom v. Graham*, 825 S.W.2d 244, 247 (Tex.App.— Fort Worth 1992, writ denied).

Concerning the merits of Closs's complaint, the trial court's failure to state the particulars of good cause that exist to support the sanction is not reversible error unless it was reasonably calculated to cause and probably did cause rendition of an improper judgment or probably prevented the appellant from making a proper presentation of the case to this court. TEX.R.APP.P. 81(b)(1).[20] The sole ground alleged in the motion for sanctions is the coercion of Kathy Closs by her ex-husband.[21] The trial court, by failing to specify the particulars of the good cause supporting its order striking the affidavit, has not so obscured its reasoning as to prevent Closs from being able to present this issue on appeal. *See Bloom*, 825 S.W.2d at 247; *Powers v. Palacios*, 771 S.W.2d 716, 719 (Tex.App.—Corpus Christi 1989, writ denied). In addition, the motion for sanctions was also based on Rule 215 of the Texas Rules of Civil Procedure, which governs the imposition of sanctions for abuse of the discovery process. TEX.R.CIV.P. 215(2)(b), (3). Rule 215 has no requirement that good cause be stated in the order imposing sanctions. *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 919 n. 9 (Tex.1991) (orig. proceeding). The trial court's failure to state the particulars of good cause in its order is not reversible error.

Finding no error requiring reversal, we affirm the trial court's judgment.

---

**19.** Kathy Closs executed an affidavit in August 1992 recanting her affidavit of October 1991. Closs explained that the earlier affidavit was a result of financial and emotional coercion on the part of her ex-husband. Closs had told his ex-wife that he would stop paying child support and would not pay the premiums to continue the insurance coverage on their daughter, who was terminally ill.

**20.** This is also an error that, instead of requiring reversal, can be remedied by directing the trial court to correct the error by amending its order to specify the particular facts constituting good cause for the sanction. TEX.R.APP.P. 81(a).

**21.** The trial court held a hearing on the motion for sanctions, but no statement of facts from that hearing has been included in the record on appeal.