**Thomas DRAPER d/b/a Draper & Associates, Appellant,**

**v.**

**Jim GARCIA, Appellee.**

**No. C14–89–00051–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

June 28, 1990.

Winston P. Crowder, Houston, for appellant.

Yocel Alonso, Bellaire, for appellee.

Before PAUL PRESSLER, CANNON and ELLIS, JJ.

## OPINION

ELLIS, Justice.

This is an appeal from a summary judgment. Appellant Thomas Draper d/b/a Draper & Associates initially filed suit against Tommie L. Hastings, Hastings Trucking, Inc. and Hastings Truck and Equipment Services, Inc. for nonpayment of insurance policy premiums. Draper amended his petition to include claims against appellee Jim Garcia for legal malpractice, conspiracy to violate federal bankruptcy laws, common law fraud and conspiracy to commit common law fraud. The trial court severed the causes of action against Garcia and then granted his motion for summary judgment. We affirm.

A· defendant who moves for summary judgment assumes the burden of showing as a matter of law that the plaintiff has no cause of action against him. *Citizens First Nat'l Bank of Tyler v. Cinco Exploration Co.*, 540 S.W.2d 292, 294 (Tex.1976). The question is thus whether defendant's summary judgment proof established as a matter of law that there was no genuine issue of material fact as to one or more of the essential elements of plaintiff's cause of action. *Id.* Summary judgments are reviewed on appeal according to the following rules:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

Appellant Draper sets forth the facts as follows. In 1982 and 1983, he was the sole proprietor of Draper & Associates, which was the local recording agent for Victoria Lloyds Insurance Company. He also owned and controlled Victoria Lloyds and several other insurance companies. Draper was responsible for the assessment and collection of all premium payments not directly billed by Victoria Lloyds and was contractually bound to pay those premiums not collected within thirty days of their due dates. Tommie Hastings was a sand and gravel hauler in southeast Texas and the owner of several corporations through which his trucking business operated. Prior to 1982, Draper wrote several policies for Hastings covering business and personal property. Jim Garcia was an attorney with Chaumont & Garcia, P.C. Jose Diaz, a former partner in that firm, was in-house counsel for Hastings Trucking, Inc. and Hastings Truck and Equipment Services, Inc.

In 1982 Jim Hancock, a family acquaintance, approached Draper about insurance for Hastings' companies. Hastings had three conditions. He wanted a retrospective premium endorsement policy. In such a policy, the insured's base rate is determined by his record, and the final premium is based solely on the amount of money paid when all claims have been fully adjudicated. The amount owed may not be determined until some time after the expiration of the policy, at which time the insured receives a final bill. Hastings also wanted a ten thousand dollar deductible to allow him to deal with small claims and thus keep his insurance costs low. Finally, Hastings wanted Jim Garcia to handle all of the

litigation for claims arising under the auto and general liability policies. In lieu of a fifty thousand dollar letter of credit as proof of ability to pay, Draper was shown a consolidated balance sheet for Hastings Trucking and Hastings Truck and Equipment Services. On the basis of this statement and Hastings' representations, Draper believed the companies to be financially solvent.

Victoria Lloyds was concerned about Garcia's handling of the Hastings claims because that was not the usual procedure. Therefore, a meeting was held to discuss the proposed claims procedures. Draper did not attend the meeting but sent one of his employees, Nita Baker. The participants agreed that Garcia would be the attorney on all claims including those within the ten thousand dollar deductible written outside the retro premium base and on all claims with a reserve of over ten thousand dollars. On those claims outside the retro premium base, Garcia would act with supervision from the Victoria Lloyds claims manager. Garcia later drafted a memorandum confirming the agreements reached at the meeting. Draper characterizes this memorandum as confirmation of Garcia's contractual relationship with Draper & Associates and Victoria Lloyds "to represent both them and the Hastings entities in the settling of claims under the insurance policies."

Draper also maintains he was ultimately responsible for Jim Garcia's bill. He states that one term of the insurance policies was that payment of all loss adjustment expenses, the claims service's fees and Garcia's attorney's fees, were part of the ten thousand dollar deductible. The liability deductible agreement made Victoria Lloyds responsible for all losses including the deductible; however, Hastings and his companies were to pay the deductible. In the event he did not do so, they would become part of the audit calculations, and Draper & Associates was responsible for remitting payment of that amount. Draper asserts that Draper & Associates was also legally responsible for Garcia's fees because Victoria Lloyds made a filing with both the Texas Railroad Commission and the Inter-

state Commerce Commission to show that coverage had been provided to Hastings and that Victoria Lloyds was responsible for any liability claims without regard to a deductible.

Draper & Associates bound coverage on two policies, general liability and automobile liability and worker's compensation, beginning July 1, 1982, for both Hastings Trucking and Hastings Truck and Equipment Services. Once the policies were finalized, Victoria Lloyds made insurance liability filings with the appropriate state and federal agencies.

The two trucking companies operated under a motor carrier certificate owned by Tommie Hastings and originally leased to Hastings Trucking. On August 16, 1982, the lease of that certificate was transferred to Hastings Truck and Equipment Services. On September 22, 1982, Diaz filed a Chapter 11 bankruptcy petition on behalf of Hastings Trucking. On April 29, 1983, Victoria Seger, an attorney with Chaumont & Garcia, filed a motion to be substituted in as counsel for Diaz. Draper & Associates and Victoria Lloyds were not told of the bankruptcy filing, and Draper renewed the worker's compensation policy for an additional year on July 1, 1983.

Draper sold Draper & Associates in August 1983. The sale did not include the outstanding liabilities, which included all accounts receivable such as the amount owed on the three Hastings insurance policies. According to the final audits on those policies, Hastings and his companies owed $301,631.00. Hastings refused to pay that amount, and Draper personally absorbed the loss. When he filed suit, Garcia answered on behalf of Hastings and the Hastings entities. It was not until Garcia filed a plea in abatement in that suit on behalf of Hastings Trucking that Draper found out about the bankruptcy filing. He then amended his petition to add Garcia and his firm as parties and to allege common law fraud, conspiracy to commit common law fraud and conspiracy to violate federal bankruptcy laws. This latter cause of action was later dropped.

Garcia takes issue with certain of these facts. He maintains that he was retained by Hastings to represent the Hastings companies in personal injury/property damage litigation (excluding worker's compensation cases) filed against those companies. This included, but was not limited to, litigation which was covered by the insurance contract between Hastings and Victoria Lloyds. Furthermore, he denies that the memorandum was a contract. Garcia claims the negotiations concerning the purchase of the insurance were conducted by Hastings personnel and that he was not involved. He also denies involvement in the discussions about or the initial filing of the Hastings Trucking bankruptcy.

■ Draper challenges the summary judgment with four points of error. In point of error one, he argues that the trial court erred in granting Garcia's motion for summary judgment on the legal malpractice claim because Draper timely presented competent summary judgment evidence which raised questions of fact on each of the allegedly negated elements of the cause of action. Draper argues that Garcia committed malpractice by representing the insurance companies and Hastings Trucking without informing the insurance companies of the conflict of interest that arose between the two. Draper asserts that this failure to inform "was done with the intent to keep the insurance policies in effect and have Draper continue to extend the insurance coverage."

Garcia argues that fundamental to Draper's allegations is his contention that Garcia owed him a duty and that this duty arose out of an attorney-client relationship. Garcia maintains there was no such relationship and therefore no duty. Draper, however, contends that he has raised a question of fact on the issue of an attorney-client relationship. He argues that as a local recording agent, he acted as an agent of both the insured and the insurer. See *Maintain, Inc. v. Maxson–Mahoney–Turner, Inc.*, 698 S.W.2d 469, 472 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.). This relationship with both Tommie Hastings and Victoria Lloyds allowed him to be in privity of contract with Garcia, and the memorandum drafted by Garcia is an expression of that contract.

In the memorandum, Garcia states that a meeting was held to discuss the insurance procedures to be followed pursuant to the new insurance program of Hastings Trucking Company. "Among other matters discussed, the following items were agreed upon by all present as the most convenient and efficient procedure for handling insurance claims at the inception of the program." Item one assigns responsibility for the investigation and adjusting of claims to SVEC Claims Service. It concludes with this sentence. "All matters relating to actual litigation or potential litigation shall be referred to and/or handled by Jim Garcia, Chaumont & Garcia, P.C." Item two states that all written reports of investigations and claims shall be addressed to Hastings' attorneys, Chaumont & Garcia, as requested by the attorneys and as part of the investigation of a claim that will likely result in litigation.

Items three and four concern instructions to drivers of the procedures to be followed in case of an accident. Item five says that a claims review meeting shall be held bi-monthly during the initial period of the program and shall be attended by a SVEC representative, a Hastings representative, Jim Hancock and Jim Garcia. Finally, item six sets up a meeting to be attended by Hancock, Garcia and a representative of the insurance carrier to check reserves on incurred claims.

In his response to the motion for summary judgment, Draper also filed his and Nita Baker's affidavits. In his affidavit, Draper states that a condition of the insurance contract was that Garcia handle all litigation for all claims arising under the auto and general liability insurance policies and that he agreed to the retention of Garcia for all these claims. He also says that he understood Garcia's statement that the purpose of the memorandum was to confirm the discussion and agreements made at the meeting to be a confirmation of "his contractual relationship with my agency and Victoria Lloyds Insurance Company to

represent both us and the Hastings entities in the settling of claims under the insurance policies." Nita Baker's affidavit outlines Garcia's role in much the same way. She states that he was the attorney on all claims within the $10,000 deductible written outside the retro premium base and also acted as counsel on claims with a reserve set over $10,000 with instructions and supervision from Lance Ferris, the Victoria Lloyds claims manager. She also states the following:

> Mr. Garcia, I believe, understood the agreement we made at the meeting as he indicated in his memorandum to us. Monthly meetings were set to discuss the claims pending. Mr. Garcia understood that he needed to contact Lance Ferris (Victoria Lloyds Claim Manager) about any law suit as we would be involved. There was no question in my mind that Garcia understood the nature of the policies and Draper's role in negotiating the policies.

Upon examination, the memorandum appears to be exactly what it says it is—a confirmation of the discussion and agreements made at the meeting. To call it a contract endows it with attributes it simply does not possess. Neither do Draper's affidavits raise a fact question regarding the alleged attorney-client relationship. Affidavits supporting or opposing a motion for summary judgment must set forth facts that would be admissible in evidence. Conclusions of the affiant, having no probative value, are insufficient to raise an issue of fact. *Manges v. Astra Bar, Inc.*, 596 S.W.2d 605, 610 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.). The Draper and Baker affidavits contain such conclusory statements. In addition, there are several statements based on understanding and belief. The belief of an affiant is insufficient to defeat a summary judgment motion. Instead, the statements contained within the affidavit must be so direct and unequivocal that perjury can be assigned against the affiant if the statement is false. *Trans–Continental Finance Corp. v. Summit Nat'l Bank*, 761 S.W.2d 575, 577 (Tex.App.—Fort Worth 1988, no writ).

These affidavits are in contrast to the affidavits supporting Garcia's motion. Tommie Hastings stated that Garcia was not retained to represent Hastings in connection with the purchase of and negotiations concerning the Victoria Lloyds policies. He stated that subsequent to the purchase of the policies, Hastings retained the firm of Chaumont & Garcia to represent the companies in litigation matters only, including personal injury and property damage claims covered by the Victoria Lloyds policy but excluding workers compensation claims. Hastings was to be responsible for all payments of legal fees. Hastings further stated that Garcia was not involved in the decision to file bankruptcy.

Jose Diaz' affidavit confirms Hastings' statements. He states that he was employed as house counsel for the two Hastings companies to represent them in all legal matters except litigation. Jim Garcia was hired after the insurance negotiations were concluded for "the sole purpose of representing Hastings in connection with litigation which was expected to arise primarily from the operations of Hastings Truck and Equipment Services, Inc., including personal injury and property damage claims regardless of whether there was insurance coverage for such claims or not." His hiring was negotiated by only Hastings personnel.

Finally, Garcia stated that he was never retained by Victoria Lloyds or by Draper and that his working relationship with Victoria Lloyds was incidental to his representation of and at the request of his client, Hastings. He did not know of the relationship between Draper and Victoria Lloyds nor did he have any knowledge of the financial arrangements involving the insurance policy.

Draper cites no authority for his statement that as local recording agent, his relationship with Hastings and Victoria Lloyds allowed him to be in privity of contract with Garcia. Draper's "payment of Garcia's legal fees" is a somewhat circuitous argument. This occurred only as an incident of their inclusion in the deductible, for

which Hastings was originally responsible. Furthermore, we find that the memorandum does not raise a fact issue as to a contractual relationship nor do the affidavits raise a fact issue as to the existence of an attorney-client relationship. Absent privity of contract, an attorney owes no duty to a third party. *First Mun. Leasing Corp. v. Blankenship, Potts, Aikman, Hagin and Stewart,* 648 S.W.2d 410, 413 (Tex.App.—Dallas 1983, writ ref'd n.r.e.). While questions remain to be answered in Draper's lawsuit against Hastings, Draper failed to raise questions of fact that would preclude summary judgment regarding the allegations presented in the severed case. Point of error one is overruled.

■ In points of error two and three, Draper argues that the trial court erred in granting summary judgment on the common law fraud and conspiracy to commit common law fraud claims because those claims were not expressly addressed in the motion for summary judgment.

In his motion, Garcia stated that Draper's causes of action were based on conspiracy to violate 18 U.S.C. § 152 (Supp.1990) and legal malpractice. He first argued that the court had no jurisdiction to adjudicate the merits of the conspiracy claim. He then addressed "the legal malpractice and related claims." There he noted that Draper alleged legal malpractice based on what Draper believed to be a conflict of interest, a breach of attorney-client fiduciary duties resulting in fraud and a breach of the Disciplinary Rules and the Canon of Ethics. Garcia then argued that the existence of an attorney-client relationship was fundamental to all of Draper's allegations, and he proceeded to negate the elements of such a relationship.

Draper argues that the common law fraud and conspiracy to commit common law claims were independent of the existence of an attorney-client relationship and that Garcia's attempt to deal with them in the context of the legal malpractice claim was inadequate. He contends that if an issue is not before the court, the court has no right to decide it.

How Garcia chose to deal with Draper's allegations in his motion for summary judgment is not critical as long as those allegations were addressed, and the fraud and malpractice claims were discussed in reference to the lack of duty. In addition, our discussion of the summary judgment proof in point of error one also applies here. The affidavits before the trial court did not raise a fact issue as to Garcia's participation in any fraud or conspiracy to commit fraud. Summary judgment was thus appropriate, and points of error two and three are overruled.

In point of error four, Draper contends the trial court abused its discretion in granting Garcia's motion for summary judgment before compelling proper discovery because the discovery issues had a direct bearing on the issues presented in the motion. The parties were engaged in a discovery dispute when Garcia filed his motion for summary judgment. The trial court postponed ruling on the discovery motions until she ruled on the motion for summary judgment. Her granting of the motion preempted further discovery.

■ Rule 166a(f) of the Texas Rules of Civil Procedure allows the trial court to refuse the application for judgment or to order a continuance to permit discovery if it appears from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition. The granting or denial of a motion for a continuance rests within the sound discretion of the trial judge and the denial of such a motion will be reversed only upon a showing that the trial court has committed a clear abuse of discretion. *Smith v. Christley,* 684 S.W.2d 158, 161 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.).

■ No abuse of discretion is shown in the record before us. The trial court granted the motion for summary judgment after the amended petition alleging causes of action against Garcia had been on file for over a year. There thus had been ample time for discovery, which had only recently begun. Furthermore, Draper did not file a motion for continuance. The

**302**

record therefore fails to show that the discovery sought was material. *Watson v. Godwin*, 425 S.W.2d 424, 430 (Tex.Civ.App. —Amarillo 1968, writ ref'd n.r.e.). Draper's only comments concerning discovery are found in his response to the motion for summary judgment and his motion to reconsider summary judgment where he stated that discovery would have shed light on the knowledge Garcia had of the bankruptcy. Under these facts, Draper has not shown that the trial court abused its discretion in failing to grant the motion for continuance. Point of error four is overruled.

In a cross-point, Garcia requests that this court award him damages for a frivolous appeal pursuant to TEX.R.APP.P. 84. However, we decline to do so as we do not find the appeal to be without merit.

The summary judgment is affirmed.