NUMBER 13-03-658-CV

COURT OF APPEALS
 
THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG





JAVIER GOMEZ D/B/A
DEL NORTE PETROLEUM,                                                  Appellant,

v.

R. W. ARMSTRONG,                                                          Appellee.




On appeal from the 197th District Court
of Cameron County, Texas.




MEMORANDUM OPINION

Before Chief Justice Valdez and Justices Hinojosa and Castillo

Memorandum Opinion by Justice Castillo

         Appellant Javier Gomez, d/b/a Del Norte Petroleum, appeals from a final
summary judgment in favor of appellee R. W. Armstrong on Gomez's claims for breach
of contract and fiduciary duty. We affirm. 
I. BACKGROUND FACTS
         Armstrong is a lawyer. One of Armstrong's clients, Intercontinental Oil
Company, and Gomez were parties to an oil purchase contract. Armstrong was not
a party to the contract. Pursuant to the contract, Gomez delivered $75,000 to
Armstrong for the benefit of Intercontinental. Armstrong deposited the funds in a trust
account, to be disbursed according to his client's instructions. A dispute arose. 
Intercontinental sued Gomez. The parties settled their lawsuit. On Intercontinental's
instructions, Armstrong tendered $12,500 to Gomez on Intercontinental's behalf. 
Gomez then sued Armstrong to recover the $75,000 he had initially deposited. 
         Gomez alleged he entered into an oral agreement with Armstrong for
Armstrong's services as a broker and agent to purchase oil. Armstrong breached that
agreement, Gomez contended. Further, Armstrong did not inform Gomez that
Armstrong represented Intercontinental, an omission Gomez claimed was a breach of
fiduciary duty. Armstrong denied he entered into a contract with Gomez and denied
he owed any fiduciary duty to him. He moved for summary judgment. 

II. DISPOSITION
A. The Standard of Review
         The function of summary judgment is to eliminate patently unmeritorious claims
and defenses, not to deprive litigants of the right to a jury trial. Alaniz v. Hoyt,
105 S.W.3d 330, 344 (Tex. App.–Corpus Christi 2003, no pet.). The standard of
review is determined by whether the summary-judgment motion was brought on
traditional or no-evidence grounds. See Tex. R. Civ. P. 166a(c), (i); see also Ortega v.
City Nat'l Bank, 97 S.W.3d 765, 771 (Tex. App.–Corpus Christi 2003, no pet.) (op.
on reh'g). In traditional summary-judgment motions, the movant bears the burden of
showing both no genuine issue of material fact and entitlement to judgment as a
matter of law. See Tex. R. Civ. P. 166a(c); see also Ortega, 97 S.W.3d at 771-72. 
In deciding whether there is a genuine issue of material fact, we take evidence
favorable to the non-movant as true. Ortega, 97 S.W.3d at 772. We make all
reasonable inferences and resolve all doubts in favor of the non-movant. Id. A
non-movant plaintiff bears the burden to respond to a traditional summary-judgment
motion if the movant defendant conclusively: (1) establishes each element of its
defense; or (2) negates at least one element of the non-movant's cause of action. Lear
Siegler, Inc. v. Perez, 819 S.W.2d 470, 471 (Tex. 1991); Hoyt, 105 S.W.3d
at 345.  We review a summary judgment de novo to determine whether a party
established its right to prevail as a matter of law. Ortega, 97 S.W.3d at 771. 
 

B. Gomez's Causes of Action
1. Breach of Contract
         The elements of a breach-of-contract claim are: (1) the existence of a valid
contract; (2) performance or tendered performance by the plaintiff; (3) breach of the
contract by the defendant; and (4) damages to the plaintiff resulting from that breach. 
Adams v. H & H Meat Prods., Inc., 41 S.W.3d 762, 771 (Tex. App.–Corpus
Christi 2001, no pet.). The requisites for a valid contract are: (1) an offer; (2) an
acceptance in strict compliance with the terms of the offer; (3) a meeting of the
minds; (4) each party's consent to the terms; and (5) execution and delivery of the
contract with the intent that it be mutual and binding. Id. The existence of an oral
contract may be proved by circumstantial as well as direct evidence. Harris v.
Balderas, 27 S.W.3d 71, 77 (Tex. App.–San Antonio 2000, pet. denied). We look to
the communications between the parties and to the acts and circumstances
surrounding those communications. See id. 
2. Breach of Fiduciary Duty
         Courts impose fiduciary duties on some relationships because of their special
nature. The "term 'fiduciary' is derived from the civil law." Johnson v. Brewer &
Pritchard, P.C., 73 S.W.3d 193, 199 (Tex. 2002) (quoting Kinzbach Tool Co. v.
Corbett-Wallace Corp.,160 S.W.2d 509, 512 (Tex. 1942)). "'Generally speaking, it
applies to any person who occupies a position of peculiar confidence towards another.
It refers to integrity and fidelity. It contemplates fair dealing and good faith, rather
than legal obligation, as the basis of the transaction.'" Brewer & Pritchard, P.C.,
73 S.W.3d at 199 (quoting Kinzbach Tool Co.,160 S.W.2d at 512). "The agreement
to act on behalf of the principal causes the agent to be a fiduciary, that is, a person
having a duty, created by his undertaking, to act primarily for the benefit of another
in matters connected with his undertaking." Brewer & Pritchard, P.C., 73 S.W.3d
at 200. 
C. Armstrong's Summary-Judgment Grounds
         In his motion for summary judgment, Armstrong asserted, among other
arguments, that: (1) he was not a party to any contract with Gomez; and (2) he did
not agree to be Gomez's agent, broker, or attorney. We conclude that Armstrong
moved for summary judgment on the necessary element of the existence of a contract
with regard to Gomez's breach-of-contract claim. See Lear Siegler, Inc., 819 S.W.2d
at 471; see also Hoyt, 105 S.W.3d at 345. Similarly, we conclude that Armstrong
moved for summary judgment on the necessary element of existence of a fiduciary
agreement with regard to Gomez's breach-of-fiduciary-duty claim. See Lear Siegler,
Inc., 819 S.W.2d at 471; see also Hoyt, 105 S.W.3d at 345. 
D. The Summary-Judgment Evidence
1. Armstrong's Evidence
         Armstrong supported his summary-judgment grounds with his affidavit and an
affidavit by Joseph L. Parkhurst, president of Intercontinental. Armstrong's affidavit
recited that: (1) he was not a party to any contract with Gomez; (2) Gomez's contract
was with Intercontinental; (3) Armstrong acted as Intercontinental's attorney in the
transaction and not as Gomez's agent or broker; (4) Armstrong did not agree with
Gomez to be his agent, broker, or attorney; (5) Gomez deposited the $75,000 with
Armstrong for the benefit of Intercontinental; and (6) Armstrong disbursed the funds
according to Intercontinental's instructions. 
         Parkhurst's affidavit established the following facts: (1) on July 25, 2001,
Intercontinental entered into an oil purchase agreement with an entity controlled by
Gomez; (2) Intercontinental engaged Armstrong on or about August 10, 2001 to
represent it in the purchase and sale agreement; (3) the entity controlled by Gomez
was unable to secure satisfactory financing; (4) Intercontinental permitted Gomez to
transfer the purchase and sale agreement to Del Norte Petroleum; (5) Intercontinental
required a $75,000 deposit from Gomez; (6) Gomez deposited the $75,000 with
Armstrong; (7) on Intercontinental's instructions, Armstrong disbursed $50,000 of the
funds and retained $25,000 for future expenses; (8) Gomez was unable to secure
satisfactory financing; (9) Intercontinental sued Gomez for breach of contract; and
(10) that lawsuit settled. 
         This Court addressed a summary-judgment motion that attempted to establish
the non-existence of an attorney-client relationship in Yaklin v. Glusing, Sharpe &
Krueger, 875 S.W.2d 380, 384 (Tex. App.–Corpus Christi 1994, no writ). We noted:
In this summary judgment proceeding, the burden is on Sharpe, the
movant [attorney], to negate the existence of the attorney-client
relationship. Sharpe attempted to do so through the affidavits of
Hoffman and Dobbs. The Hoffman and Dobbs affidavits describe a
transaction which usually involves Sharpe handling the paperwork for the
bank, solely on the bank's behalf. They establish that Sharpe had an
attorney-client relationship with the bank. As such, however, they do
not necessarily negate the possibility of Sharpe representing Yaklin as
well in the transaction. Given the inferences allowed a non-movant's
evidence in a summary judgment proceeding, we cannot say that Sharpe
was not representing Yaklin as a matter of law. 

Id. Here, however, Armstrong's summary-judgment evidence left no ambiguity as to
whether Armstrong acted as Gomez's agent as well as Intercontinental's attorney. We
hold that Armstrong conclusively negated at least one element of both of Gomez's
causes of action. See Lear Siegler, Inc., 819 S.W.2d at 471; Hoyt, 105 S.W.3d
at 345. The burden shifted to Gomez to raise a fact issue as to the existence of a
contract with Armstrong and the existence of a fiduciary agreement between
Armstrong and Gomez. See Hoyt, 105 S.W.3d at 345. 
 2. Gomez's Response
         Gomez supported his response to Armstrong's motion for summary judgment
by two affidavits. Gomez's affidavit recited in its entirety as follows:
I entered into an agreement with R.W. ARMSTRONG for the
purchase of Oil. MR. ARMSTRONG was hired by me to be my Agent and
Broker for the purchase of Oil. I paid R.W. ARMSTRONG $75,000.00 by
check. The check was made out to R.W. ARMSTRONG Trustee. Mr.
Armstrong endorsed the check and deposited [sic] in his account. 
 
MR. R.W. ARMSTRONG represented to me that he would handle
my account and would find a Seller of the Oil. I hired him as an Agent-Broker. Never did MR. R.W. ARMSTRONG represent to me that he
represented INTERCONTINENTIAL [sic] OIL CO. as their attorney. 
 
MR. R.W. ARMSTRONG as my agent has failed to deliver the oil
as contracted for. He refuses to release my money, which was a total
of $78,500.00
 
I was willing and able to perform the purchase with a line of credit
obtained from Texas State Bank. MR. R.W. ARMSTRONG has breached
the contract, and fiduciary duty by not returning my money and by
releasing funds to a 3rd party without my consent. 
 
MR. R.W. ARMSTRONG, as an agent knew he as [sic] obtaining
a contract for oil for my benefit. 
 
MR. R.W. ARMSTRONG has misled me, he has breached his
fiduciary duties owed to me as an Agent, has created a conflict of
Interest problem, as he claims he represented INTERCONTINENTIAL [sic]
OIL CO. 

         Gomez also attached the affidavit of Joe Martinez to his summary-judgment
response. Martinez's affidavit recited in its entirety:
MR. JAVIER GOMEZ and R.W. ARMSTRONG entered into a Agent-Broker Agreement which R.W. ARMSTRONG would represent JAVIER
GOMEZ in obtaining Oil. I delivered a check to R.W. ARMSTRONG for
$75,000.00 as part of the down payment. 
 
MR. R.W. ARMSTRONG never told JAVIER GOMEZ or me that he
represented INTERCONTINENTIAL [sic] OIL CO. MR. R.W. ARMSTRONG
represented himself to JAVIER GOMEZ, as his agent-broker and agreed
to represent MR. JAVIER GOMEZ. The Product was never delivered and
R.W. ARMSTRONG never provided the services to JAVIER GOMEZ. 
 
The funds were requested from R. W. ARMSTRONG. But he
refuses to return the funds to MR. JAVIER GOMEZ. 
 
MR. R.W. ARMSTRONG was representing JAVIER GOMEZ to
obtain Oil from an Oil Co. He was the Broker-Agent for JAVIER GOMEZ. 
MR. R. W. ARMSTRONG has breached his agreement by not performing
and delivering the product as contracted for. 

         In his summary-judgment response but not in his affidavit, Gomez alleged that
he contracted with Armstrong "as Broker-Agent to purchase oil" on or about
September 21, 2001. He contended that he was "a third party beneficiary on any
arranged purchase of oil" between Armstrong and Intercontinental. He also claimed
entitlement to $78,500 from Armstrong. 
3. Armstrong's Objections
         Armstrong objected to both Gomez's and Martinez's affidavits as being
conclusory. He also objected to Martinez's affidavit as not showing the basis for his
personal knowledge. 
4. The Trial Court's Ruling
         Armstrong presented his objections to the trial court at the summary-judgment
hearing. After considering the motion, response, and affidavits, the trial court ruled:
I read the affidavit of Mr. Gomez who claims that he entered into
a contract with Mr. Armstrong. But in his affidavit, which is Exhibit
No. 7 to Plaintiff's Responses to Defendant's Motion for Summary
Judgment, I find that it's very vague and that it doesn't set out the terms
of what the contract was or what was expected of Mr. Armstrong, if
there was a contract, other than just to purchase oil, but never as to how
much oil, by when, and if it could be performed within a year or not. 
There is really nothing that tells me that, that he could have performed
it within a year. He does allege that it is an oral contract. 
 
Then I have the affidavit of Mr. Joe Martinez. In his affidavit he
says he delivered a check to Mr. Armstrong for 75,000 as part of the
down payment. So we don't even know if there was a contract and how
much the contract was for. He makes conclusions and he doesn't tell me
how he arrives at those conclusions. 
 
So I will find that he has not met his burden and I will grant your
motion for summary judgment. 

         Accordingly, the record indicates the trial court ruled on Armstrong's objections,
either expressly or implicitly. See Tex. R. App. P. 33.1(a)(2)(A); see also Columbia Rio
Grande Regional Hosp. v. Stover, 17 S.W.3d 387, 395-96 (Tex. App.–Corpus Christi
2000, no pet.). Gomez did not seek leave to amend his summary-judgment proof. On
appeal, Gomez does not challenge the trial court's rulings on Armstrong's objections. 
                                                  E. Analysis
1. Waiver on Appeal
         A party who does not object to the trial court's ruling excluding
summary-judgment evidence or seek to amend any deficient affidavit waives the
right to complain about the ruling on appeal. Rayl v. Borger Econ. Dev. Corp.,
963 S.W.2d 109, 113 (Tex. App.–Amarillo 1998, no pet.) (holding that appellant's
failure to object to trial court's ruling excluding summary judgment waived issue);
Inglish v. Prudential Ins. Co. of Am., 928 S.W.2d 702, 705 (Tex. App.–Houston [1st
Dist.] 1996, writ denied) (holding that appellants who did not request opportunity to
amend summary-judgment responses waived any complaint on appeal of trial court's
ruling sustaining objections and special exceptions to affidavit). Similarly, a party who
does not direct an issue on appeal challenging a trial court's ruling waives that issue. 
Samples Exterminators v. Samples, 640 S.W.2d 873, 875 (Tex. 1982) (per curiam). 
2. Incompetent Summary-Judgment Evidence
         Even assuming that Gomez had not waived any complaint about exclusion of
his summary-judgment evidence at trial and that his issue on appeal fairly includes a
challenge the trial court's rulings on Armstrong's objections, we agree with the trial
court's assessment of the conclusory nature of Gomez and Martinez's affidavits. The
affidavit of an interested party is acceptable summary-judgment proof where it is clear,
positive and direct, otherwise credible, free from inconsistencies and contradictions,
and could have been readily controverted. Tex. R. Civ. P. 166a(c); James v. Hitchcock
Indep. Sch. Dist., 742 S.W.2d 701, 706 (Tex. App.–Houston [1st Dist.] 1987, writ
denied). To be competent summary-judgment proof, an affidavit must affirmatively
show that it is based on personal knowledge and state facts in a form that would be
admissible at trial. Draper v. Garcia, 793 S.W.2d 296, 300 (Tex. App.–Houston [14th
Dist.] 1990, no writ); Marek v. Tomoco Equip. Co., 738 S.W.2d 710, 714 (Tex.
App.–Houston [14th Dist.] 1987, no writ). Summary-judgment affidavits may not be
based on hearsay. Einhorn v. LaChance, 823 S.W.2d 405, 410 (Tex. App.–Houston
[1st Dist.] 1992, writ dism'd w.o.j.). 
         Self-serving statements in affidavits of interested witnesses concerning their
state of mind are incontrovertible because "the mental workings of an individual's mind
are matters about which adversaries have no knowledge or ready means of confirming
or controverting." Lukasik v. San Antonio Blue Haven Pools, 21 S.W.3d 394, 399
(Tex. App.–San Antonio 2000, no pet.) (quoting Hayes v. E.T.S. Enters., Inc., 809
S.W.2d 652, 657 (Tex. App.–Amarillo 1991, writ denied)). The phrase "could have
been readily controverted" means "the testimony at issue is of a nature which can be
effectively countered by opposing evidence." Casso v. Brand, 776 S.W.2d 551, 558
(Tex. 1989). Statements of opinion and conclusions of the affiant cannot be
countered and are incompetent summary-judgment proof. Aldridge v. De Los Santos,
878 S.W.2d 288, 296 (Tex. App.–Corpus Christi 1994, writ dism'd w.o.j.)
(citing Brownlee v. Brownlee, 665 S.W.2d 111, 112 (Tex. 1984)); Harley-Davidson Motor Co. v. Young, 720 S.W.2d 211, 213 (Tex. App.–Houston [14th
Dist.] 1986, no writ). Conclusions of the affiant, unsupported by fact, have no
probative value and do not raise a fact issue. Draper, 793 S.W.2d at 300; Manges v.
Astra Bar, Inc., 596 S.W.2d 605, 610 (Tex. Civ. App.–Corpus Christi 1980, writ ref'd
n.r.e.). 
         We agree with the trial court that the Gomez and Martinez affidavits contain
conclusory statements that have no probative value. See Draper, 793 S.W.2d at 300. 
Recitations in the affidavits must be so direct and unequivocal that perjury can be
assigned against the affiant if the statement is false. See id. The statements in the
Gomez and Martinez affidavits are not "direct and unequivocal." Martinez's
statements are hearsay as well as conclusory. See Einhorn, 823 S.W.2d at 410.         Moreover, certain statements in Gomez's affidavit are inconsistent with and
contradict the allegations in his petition and summary-judgment response. Gomez
pleaded in his petition and his summary-judgment response that Armstrong agreed to
be his agent and broker on September 21, 2001.


 That date was after the date
Gomez deposited the $75,000 with Armstrong. Further, Gomez did not dispute that
an entity he controlled contracted directly with Intercontinental on July 25, 2001 to
purchase oil, long before he claimed to have contracted with Armstrong for the same
purpose. Also, Gomez variously claims he is entitled to $78,500, yet he does not
dispute that he deposited only $75,000 with Armstrong. He did not account for his
receipt of $12,500 from Armstrong in connection with the settlement with
Intercontinental. He made no attempt to address these discrepancies and
inconsistencies in his summary-judgment evidence. Finally, Gomez claimed both to
have contracted with Armstrong "for the purchase of Oil" and that Armstrong "would
handle [his] account and would find a Seller of the Oil" as Gomez's agent and broker. 
We find that Gomez's affidavit is not free of contradictions and inconsistencies and
cannot be readily controverted. See Tex. R. Civ. P. 166a(c). 
         The Gomez and Martinez affidavits are in contrast to the affidavits supporting
Armstrong's motion. See Draper, 793 S.W.2d at 300. Armstrong unequivocally
denied being a party to any contract or agreement with Gomez. He set forth facts
establishing that Gomez had contracted with Intercontinental, not with him. He
attested he acted as Intercontinental's lawyer in the transaction, not as Gomez's
agent. Armstrong expressly denied he agreed to be Gomez's agent, broker, or
attorney. He established he accepted the funds deposited with him by Gomez as 
Intercontinental's attorney for its benefit. Finally, Armstrong stated unequivocally he
disbursed the funds according to Intercontinental's instructions. 
         Parkhurst's affidavit confirms Armstrong's statements. See id. Further,
Parkhurst established that the attorney-client relationship between Intercontinental and
Armstrong began about September 10, 2001, before Gomez deposited the funds with
Armstrong on September 17, 2001. Parkhurst also attested that Gomez deposited the
$75,000 with Armstrong on Intercontinental's instruction. 
         Neither Gomez's nor Martinez's affidavit sets out the elements of any purported
contract or agreement between Gomez and Armstrong. Gomez did not establish any
inception date for his purported agency agreement with Armstrong, nor did he provide
any facts from which the details of its terms, conditions, or duration may be inferred. 
See H & H Meat Prods., Inc., 41 S.W.3d at 771 (finding that "requisites for a valid
contract" include offer, acceptance, meeting of the minds, consent to terms, and
intent that agreement be mutual and binding); see also Brewer & Pritchard, P.C.,
73 S.W.3d at 200 (finding that existence of fiduciary duty requires agent's agreement
to act primarily on behalf of principal). Gomez did not dispute that an attorney-client
relationship existed between Armstrong and Intercontinental and in fact recognized
that fact in his summary-judgment response. Except under circumstances not relevant
here, absent privity of contract, an attorney representing a party in a transaction owes
no duty to a third party to the transaction. See Draper, 793 S.W.2d at 301 (citing
First Mun. Leasing Corp. v. Blankenship, Potts, Aikman, Hagin & Stewart,
648 S.W.2d 410, 413 (Tex. App.–Dallas 1983, writ ref'd n.r.e.)); cf. McCamish,
Martin, Brown & Loeffler v. F.E. Appling Interests, 991 S.W.2d 787, 793-94, (Tex.
1999) (third party may bring negligent-misrepresentation claim); McKnight v. Riddle
& Brown, 877 S.W.2d 59, 61 (Tex. App.–Tyler 1994, writ denied) (fraud claim);
Burnap v. Linnartz, 914 S.W.2d 142, 148 (Tex. App.–San Antonio 1995, writ denied)
(negligent failure to advise of non-representation). 
         In any event, Gomez did not assert any claims against Armstrong as an
attorney. Rather, his claims focused on Armstrong as his agent and broker. 
Armstrong's uncontroverted summary-judgment evidence established that Armstrong
was acting as Intercontinental's attorney when he received the disputed funds from
Gomez. Gomez's inconsistent and conclusory summary-judgment evidence does not
create any fact issue that Armstrong was acting as Gomez's agent and broker when
he received the disputed funds from Gomez. Finally, Gomez's summary-judgment
evidence did not controvert the evidence in Parkhurst's affidavit that Gomez deposited
the $75,000 with Armstrong on Intercontinental's instruction, not Armstrong's. We
hold that Gomez did not raise a question of fact that precludes summary judgment on
either of his two causes of action. See Draper, 793 S.W.2d at 301. We overrule
Gomez's sole issue. 
III. CONCLUSION
         We affirm the judgment of the trial court. 

                                                      ERRLINDA CASTILLO
                                                      Justice


Memorandum Opinion delivered and filed
this 31st day of August, 2004.